Good morning. May it please the court. Harini Raghupati with the Federal Defenders of San Diego on behalf of Mr. Lopez-Pacheco. The immigration judge at Mr. Lopez-Pacheco's removal hearing gave him two choices. Remain in detention for some indefinite period of time so that at some point in the future he might be able to pay for his own transportation out of custody and out of the country or get out of custody and the country today for free. Because the immigration judge didn't explain that the former option, voluntary departure, was a way to avoid the consequences of a removal order and potentially facilitate readmission in the future, I never told Mr. Lopez-Pacheco how long he would have to remain detained to pursue voluntary departure. He wasn't meaningfully advised and he wasn't given a meaningful opportunity to apply. Okay, so let's I want to make sure I've got this down. So what should the IJ have said? The IJ first should have said that voluntary departure is a way to avoid the consequences of a removal order and potentially facilitate your reentry in the future. And so instead the IJ simply said voluntary departure is where you or someone on your behalf pays for your ticket out of the country. The second thing the IJ should have said is I'm going to continue your case but it's either going to be on this specific date or by law I'm only required to wait for 30 days. So that Mr. Lopez-Pacheco knew that he had a finite window of time in which he'd be remain detained and he could have made a more an intelligent decision whether to pursue voluntary departure or not. Do you think it's it's too much to ask of the petitioner or the defendant I guess in this case to just inquire? Your Honor, how long are we talking about? I do, Your Honor. Mr. Lopez-Pacheco was an unrepresented alien and this court has previously said in Aguiman that the dissent in that case said wanted to place the burden on the alien to ask about the procedures. And the court said the dissent would place the burden on Aguiman to request these alternatives but it's the IJ's duty to outline Aguiman's procedural rights for him as a pro se alien and deportation proceedings. Well no, we're not talking about the procedures. The judge outlined what was going to happen. There would be a later hearing to determine whether he might be granted this relief. The judge doesn't have any way necessarily of getting inside the petitioner's head and to know well you know this person's trying to weigh how much longer will I be in custody versus you know the benefits of getting this relief. So I don't know why is it unreasonable to put it on the petitioner to say if that's the most material consideration how long I'm gonna have to remain in custody in order to find out a Are we talking about six months from now? Well I think the omission about the time period is just one omission. I think it kind of dovetails with the prior due process violation which is that the immigration judge also didn't really explain what voluntary departure was. And so Mr. Lopez Pacheco didn't understand how significant it was for him. And it was significant for him because he had a son in the country who was a citizen. He had family members who were citizens. And this would be a way for him to potentially reunite with those family members lawfully in the future. And so he didn't have the basis of knowledge of what this form of relief was to begin with. And then the other thing the immigration judge is required to do under this court's case law is to provide guidance to the alien on how they can prove their application for relief. So in this case that would be a simple advisal to the alien of here are the negative factors, here are the positive factors. And so Mr. Lopez Pacheco didn't have that base of knowledge either. So all he knew was he was unrepresented. The government attorney was opposed to his request for voluntary departure. He would have to remain detained. And his history was such that he had been He did tell everybody the consequences of being removed. You're saying he should have said and in addition you won't have those consequences but something else. But he certainly did point out what the evils of your being removed were. Is that right? That's correct, Your Honor. He did explain what the consequences of removal were. In the government's position that is essentially the inferences that voluntary departure was not those consequences. But there are two problems with that. One is that as an unrepresented alien there's no way for him to know that inference is reasonable. And that inference isn't the only logical inference. So for example there are lots of things that are sort of mutually exclusive that can lead to the same results. And without being told expressly that voluntary departure is different not only from removal in terms of who pays for the ticket but also in terms of the reason for him to know that. I'd like to briefly shift to, if I may, to the prejudice issue. And so the question here is whether a voluntary departure would be plausible for Mr. Lopez Pacheco. And I think there are two options that this court has available assuming it finds a due process violation. I think the easiest way to resolve the case would be simply to remand it back to the district court because the district court was essentially acting as an IJ in this case in performing the balancing of the positive and the negative factors. And the district court's analysis focuses exclusively on Mr. Lopez Pacheco's criminal history. And the district court doesn't say anything about his considerable positive equities which include his son who is a U.S. citizen, his sister who was a lawful permanent resident, his residence in the U.S. for 15 years between 8 and 22 years old. And so none of that appears in the court's analysis. And so this court has remanded in cases like this where either the district court hasn't performed a prejudice analysis or its prejudice analysis is legally flawed. So I think that would be one option in terms of prejudice. And then the alternative, of course, would be for this court to address the issue of prejudice on its own. And there usually review the case de novo. It's not deference to the that judgment here. Yes, it is reviewed de novo. I would say in this case the government is reviewing de novo and come out either way. Correct. Correct. I think if the court were to review it de novo, there's three comparison cases that I cited in my briefs. Matter of Munadif, matter of Gonzalez Figueroa and matter of Garcia Jimenez. And those are all three similarly situated aliens in terms of their criminal histories. I believe Gonzalez Figueroa actually had four convictions for for assault. And he also had two misdemeanors. And he spent about three years in custody, whereas Mr Lopez Pacheco admittedly had one felony conviction and one misdemeanor. He spent about a year in county jail. So if you just did the comparison based on those three cases, I certainly think it seems plausible that Mr Lopez Pacheco would have received a grant of voluntary departure. You don't think there's anything particularly, um, I don't want to say disqualifying because it's not a categorical matter, but I mean, domestic violence convictions are maybe of a slightly different order in terms of the within the realm of we're talking about this form of relief. No. Yeah, I certainly don't want to undersell the gravity of his prior conviction. But I think that the fact that he received a 207 he received a suspended sentence. So he received three years of probation. And as a term of that probation, he was given 270 days in county jail. And if you look at the statute in California, that's actually the sort of terms of imprisonment, or I think 223 and four years in prison. And so the judge exercised his discretion. The facts of the underlying offense are pretty egregious, though. And that is something that the judge can look at, right? Certainly, Your Honor. I do think, though, that the three comparison cases that I pointed to, there was an alien who, um, cross participated. He had a role in covering up a brutal murder. I'm not sure if there's a meaningful difference between murder and domestic violence. I don't necessarily know if I want to get into that. He actually testified against some of the assailants, didn't he? I looked at your three cases. Two of them, you know, to be crass or kind of bar fights. The guys got in various assaults and at various times in the somewhat distant past. And then you have the murder one, which is interesting, but it's a different kind of thing. That is, he was not charged with participating, but he had testified on the one hand in some other coverage. I think Judge Watford, for me, raises the question. You've got quite a recent domestic violence felony, and the government is opposing. How plausible is it that this IJ would have granted voluntary departure? It's sort of an odd thing for us sitting up here at the third level to decide what's plausible at an immigration hearing, but when you kind of look at the gestalt of it, didn't seem like that he was going to go easy on him. I agree that it's sort of a maybe perhaps awkward question for this court to answer, but such is the case law. And I think that the other two cases we pointed to, there were four convictions for assault. The alien had four convictions for assault, and in the other case, Munadif, the alien was also arrested for assault and battery. And I understand perhaps there's not that intimate partner implication in assault as opposed to domestic violence, but that certainly shows that aliens with violent convictions, and perhaps four violent convictions, were granted voluntary departure. And then, of course, on the other side of the ledger, there were significant countervailing positive factors in Mr. Lopez-Pacheco's case, including his, as I mentioned, his family, his residence, his education, and his employment in the country. So I think those certainly show that on balance, it was plausible. And to the extent that there are certain factual questions that the government has raised in its brief that it didn't raise below, I think that would be appropriate for this court to then remand so that the district court can conduct the plausibility analysis with the fuller thank you. I will give you a minute for a rebuttal. Thank you. Thank you, Miss Raghupathy. Mr. Krishnamoorthy. Good morning, and may it please the court. Ajay Krishnamoorthy for the United States. With the court's permission, I'd like to start by addressing the judge's, the adequacy of the judge's explanation of the benefits of voluntary departure. This is a little bit hard to get a sense of from the written excerpts, but what's apparent from the audio that was also submitted to the court is the information that the judge provided comes as more or less a continuous stream in a span of about four or five minutes. And I think that's significant in informing what a reasonable person would have understood as well. So first, the judge expressly identified voluntary departure as a form of relief from removal, along with a cancellation of removal and adjustment of status. Then the court, then the judge explained that voluntary departure also involved leaving the country, but was different for removal and that involved paying for your own transportation. And then immediately after that, the judge explained what the consequences of removal were. That is, it involved a future bar and admission and potential criminal liability. So based on that information, as well as the sequencing and the proximity of that information, I think a reasonable person would have understood that the benefits of voluntary departure were avoiding the consequences of removal. The only other issue I wanted to... Counsel, I have to say that at this point in sort of the process, I'm surprised that the DHS doesn't have standardized guidelines for IJs to read. It is somewhat surprising, Your Honor, but I think the general rule has been that there are no specific advisals that IJs have to give. The touchstone for this court is whether or not the advisal was meaningful so that someone would have understood that they were eligible. And here we know that Mr. Lopez-Pacheco did understand that he was eligible because he asked for that relief. And then does it make it cut either way, that then the government pipes up and says, well, we're going to be against this? One might think that that would also lead you to think that voluntary departure is a good thing. Correct. But then on the other hand, as your adversary has indicated, if he goes that route, then the government's going to oppose it. Right. And so, you know, in this case, the argument is that that had some sort of improperly coercive effect because then the judge said, I'm going to continue this case. Yeah, and then it remains in detention. Right. But I think as the district court correctly recognized, that the mention of the continuance also has to be tethered to the language the judge actually used, which is that the judge is going to fully consider both sides' arguments. So I think under these facts and those circumstances, a reasonable person wouldn't have felt coerced into giving up that request. I just want to bring... He obviously felt coerced because he at the time was not to apply for this relief. And then when he found out he was going to have to remain in prison for longer to see if he could get it, he said, well, just send me back today. I mean, I don't think there's any question that that was the driving force in his decision. Right. Your Honor, I agree. There is a tradeoff that people in his position have to make, whether or not they want to continue with proceedings or face removal immediately. But the fact that he chose to make that tradeoff doesn't mean that there was some sort of due process violation in saying that there'd be continuance. And again, I go back to the example that the IJ actually used. This wasn't a case where, you know, there was no explanation given for why the continuance existed or what would happen at that future date. Here the IJ said, like, I'm going to give you your shot to convince me that voluntary departure is appropriate. Right. But it could be in six months, you know, for all the petitioner knew, right? I agree that it may have been a better practice to spell out when that would have been. But again, to me, it also is significant that there was no question about when the next date was going to be. There's no. Yeah, there was. There was no date set. Right. There's no question from the petitioner. Oh, he did question. Yeah. Right. No, no. Right. But he's not represented, not familiar with how these things work. He's probably I have to believe the conditions of confinement were pretty miserable. Probably you and I would have wanted to get out the day, you know, as soon as date we could if we were there. So I don't know. You know, that's the question I posed to your opponent. Is it? I'll just put it back to you. Is it really reasonable to expect someone in his shoes to have the wherewithal to inquire? Well, how long exactly, Your Honor, are we talking about? I don't think that makes this a due process violation. Like I said, I acknowledge that it may have been a better practice in this case to specify exactly when that next date was going to be, especially for someone that was in custody. But I think, you know, especially given how this this hearing played out, this adviser comes after like a fairly detailed colloquy with Mr Mr Lopez Pacheco about his equities, how long he's been in the country, whether or not he has kids, whether or not he has family members in the country. The I. J. In that process is trying to gather information and has sort of signaled a willingness to listen to Mr Lopez Pacheco's request. So I think under these circumstances, I wouldn't call that a due process violation. Um, I just like to briefly touch on the prejudice issue as the court is has recognized conduct that was, you know, this violent and that recent is not easily overlooked. One of the cases that I cited called matter of Karanza, I think spells out how the B. I. A. Would weigh sort of domestic violation, domestic violence convictions of that nature against the equities that Mr Lopez presented. And given those facts, I don't think it's plausible that Mr Lopez Pacheco would have been granted relief. You have any any view or how he would state plausibility? I mean, I personally I get sometimes interested or distressed when we have these generic words. Does that mean 10% chance, 50% chance, 90% chance? How much does it take to be plausible? The most precise answer I can give the court based on this court's prior decisions is that it's something more than possible. There's, you know, one of the cases cited in in Mr. Novoa, which sort of explains that the existence of one arguably similar case isn't enough. So there has to be something a little bit more than that of one similar, arguably similar case in which similar case where relief was granted, right? It wasn't enough to show plausibility. In that case, plausibility, you have to look at all the circumstances, including his past record, and you have to look at what the I. J. Says as to whether that I. J. would grant relief. No, I don't. So to the first question, yes, I think it's all the circumstances, you know, generally for voluntary departure. It's a weighing exercise of both the positive and the negative equities. But I think this court has declined to look at what a specific I. J. Says in assessing plausibility. Unless the court has any further questions. Okay, thank you. Sorry about the I'll give you a minute. Thank you. I just wanted to briefly touch on the government suggestion that the I. J. explained the reason for the continuance, which was to provide the full reasons why Mr Lopez Pacheco was eligible for voluntary departure. I think the problem with infer with reading too much out of that is the I. J. Never told Mr Lopez Pacheco what factors are even relevant. So simply telling someone I'll give you more time so you can present to me reasons why you apply for this form of relief that I'm not really explaining to you what that relief is. It's sort of an empty advisal on an empty promise, and the I. J. Very well have made very well have been well meaning and wanting to afford Mr Lopez Pacheco more process. But that's sort of irrelevant. When judge by be asked about why they didn't have a a standardized, I can understand that for part of it. But if you wanted them to explain what factors are relevant, do you? What is there some case or some document that you think they should have followed? Because that terms of how he should explain the factors involved. I certainly honor. I think the B. I. A. Has held in matter of Arguello's compost, which is an on bunk B. I. A. Decision that there are factors. There are set factors that are considered for positive equity. So residents in the country family ties. If we look for something, we would look at the language of Arguello's campus. Yes, and this court has adopted that several times. Eso I think my main point is just that telling an alien, unrepresented alien, I'll give you more time to or you can get out of custody today. I think that is a due process violation because it's not a meaningful advisal. Thank you. Okay, thank you. We thank both counsel for the argument. United States versus Lopez Pacheco is submitted.
judges: Boggs, Bybee, Watford